JUSTICE NELSON,
dissenting.
¶32 I respectfully dissent from the Court’s decision.
¶33 All things being equal, I would likely concur in much of the Court’s decision. That said, however, on the record before this Court-which I believe was the same record before the District Court-I cannot understand how any judicial review can realistically be conducted of the proceedings leading up to the creation and expansion of the BID at issue.
¶34 The entirety of the City of Kalispell’s file in the record of this matter contains not one original document. The official file, which is in the record as Exhibit 3, contains nothing but photocopies of petitions-without any incorporated-by-reference map attached-and other photocopied documents. There are different maps, and there is no way to tell which map went with any given petition. Moreover, the file is incomplete. Apparently, the original petitions were not maintained by the City; indeed, some of them were returned to one of the promoters of the BID and those were lost by him. We do not know that all the petitions and protests are in the file, and there is no way to verify any of this information.
¶35 City Attorney Harball’s May 26, 2006 affidavit states that, although he received a map of the boundaries of the proposed BID at the time he received the petitions, none of the individual petitions had a map attached. Similarly, the City Attorney’s affidavit states that he “could not determine whether the written protests were filed by owners of property within the proposed BID having projected aggregated assessments of 50% or more of the total projected assessments for property within the BID.” However, he then goes on *36 to speculate that since there were “only 12 protests,” it would have been “unlikely, if not impossible,” that the “50% or more” threshold would have been reached. That is not a conclusion that a reviewing public officer should have to extrapolate from missing documents. The point is that neither the City Attorney nor the City Council should have relied on less than accurate and complete petitions and protests. If the foundational documents for creating the BID were incomplete, faulty, or not capable of verification, then whatever the City Council did after that was tainted. M. R. Civ. P. 56(e) requires that “[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.” City Attorney Harball’s affidavit does not include sworn or certified copies of the petitions and protests he examined. Indeed, given what was, apparently, presented to him for review, it is doubtful that he could have sworn to or certified either.
¶36 Undisputedly, a complete and accurate file demonstrating that the BID was created and extended in accordance with the governing statutes does not exist. Thus, I cannot see how any reviewing court can determine conclusively that any of the statutory requirements referred to in the BID Act were, in fact, ultimately satisfied in this case.
¶37 It is not the judiciary’s job to maintain complete and accurate original records supporting the creation of statutorily-authorized tax or improvement districts. Moreover, it is not the judiciary’s obligation-or the city attorney’s job, for that matter-to fill in the gaps where incomplete documents are presented for review. Proper recordkeeping and maintenance of public records are uniquely the obligation of the local government entity involved. See e.g. § 7-1-4144, MCA (requiring, with exceptions not at issue here, that all records and other written materials in the possession of a municipality be available for inspection and reproduction by any person during normal office hours); § 2-6-102, MCA (stating that citizens have a right to inspect and copy public writings and that public officers having custody of public writings are bound to give certified copies of the original documents). In this case, there was simply no way for the property owners who wished to challenge the creation and extension of the BID to mount an effective attack; the original underlying petitions as actually circulated and signed with the incorporated-by-reference maps attached were not available. Challengers could not present the District Court with certified copies of original petitions as circulated; the originals didn’t exist. Instead, the property owners were simply forced to take the City Attorney’s and one of the promoter’s words that *37 there were sufficient petitions and insufficient protests. Challengers could not verify this information themselves.
¶38 Simply put, it is inconceivable that any local government asked to create a tax or improvement district would not maintain the original petitions and protests which, under the governing statutes, comprise the foundational documents for the requested governmental action. It follows that given the absence of an accurate and complete reviewable record in this case, we should reverse and direct the District Court to order the purported proceedings creating the BID void ab initio. The BID promoters should be required to start over, and the City of Kalispell should be required to keep and maintain the original foundational documents so that those wishing to challenge the creation of the BID, and the reviewing courts, both have a complete and accurate record with which to work.
¶39 For that reason, I cannot join the Court’s Opinion. I respectfully dissent.
JUSTICE COTTER joins the Dissent of JUSTICE NELSON.